**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
1241 S. Glendale Ave, Suite 204
Glendale, CA 91205
Tel: (818) 484-5204

*Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IVY-KARINA VALES, individually and on behalf of all others similarly situated,<br><br>               Plaintiff,<br><br>   vs.<br><br>PIERRE FABRE USA INC. AND PIERRE FABRE DERMO-COSMETIQUE USA, INC., New Jersey corporations,<br><br>          Defendants. | Case No.  5:25-cv-10523<br><br>**CLASS ACTION COMPLAINT**<br><br>1.  VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et seq.*<br><br>2.  FALSE AND MISLEADING ADVERTISING IN VIOLATION OF BUSINESS AND PROFESSIONS CODE § 17500, *et seq.*<br><br>3.  VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.*<br><br>4.  BREACH OF EXPRESS WARRANTY<br><br>5.  RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Plaintiff Ivy-Karina Vales ("**Plaintiff**"), individually and on behalf of all others similarly situated, bring this class action complaint against Defendants Pierre Fabre USA Inc. and Pierre Fabre Dermo-Cosmetique USA, Inc. (collectively, "**Defendants**") and alleges as follows:

## SUMMARY OF THE ACTION

1.     This is a class action lawsuit brought on behalf of all purchasers of Defendants' Avène "Preservative-Free" and/or "0% Preservative" skin care products (the **"Products"**), sold online and at retail locations throughout California and the United States.

2.     Defendants falsely and deceptively advertise the Products as "Preservative-Free" and/or "0% Preservative" ("**Challenged Representations**"). However, contrary to the Products' Challenged Representations, as explained in detail below, the Products actually contain citric acid — a well-defined artificial preservative ingredient commonly used in cosmetic products.

3.     Defendants seek to take advantage of consumers' desire for truly premium products that are free from preservatives by falsely, misleadingly, and deceptively labeling the Products with the Challenged Representations. Defendants do so at the expense of unwitting consumers, as well as Defendants' lawfully acting competitors, over whom Defendants maintain an unfair competitive advantage.

4.     Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Period (Class and/or Subclass defined infra), for dual primary objectives: *One*, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for Products that should, but fail to, comport with the Challenged Representations (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. *Two*, Plaintiff seeks, on her individual behalf and on behalf of the Class/Subclass, injunctive relief to stop Defendants' unlawful manufacture, marketing, and sale of the Products with the Challenged Representations to avoid or mitigate the risk of deceiving the public into believing that the Products conform to the Challenged Representations, by requiring Defendants to change their business practices, which may include one or more of the following:

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

removal or modification of the Challenged Representations from the Products' labels, removal or modification of the Challenged Representations from the Products' advertising, modification of the Products' formulation be it a change in ingredients or its sourcing and manufacturing processes, and/or discontinuance of the Products' manufacture, marketing, and/or sale.

5.     True and correct copies of the Products' label are pictured below.

**Avene Tolerance Control Soothing Skin Recovery Cream**



CLASS ACTION COMPLAINT

**Avene Tolerance Control Soothing Skin Recovery Balm**



CLASS ACTION COMPLAINT

**Avene XeraCalm A.D Lipid-Replenishing Cream**[1]



---

[1] EAU THERMALE Avène XeraCalm A.D Lipid-Replenishing Cream product includes but is not limited to the following types or sizes: (a) 6.7 fl. oz.; and (b) 13.5 fl. oz.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

**Avene XeraCalm A.D Lipid-Replenishing Balm[2]**



Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

---

[2] EAU THERMALE Avène XeraCalm A.D Lipid-Replenishing Balm product includes but is not limited to the following types or sizes: (a) 6.7 fl. oz.; and (b) 13.5 fl. oz.

6

6.    Consumers are deceived by Defendants' labeling and advertising of the Products as "Preservative-Free" and/or "0% Preservative" believing that they are purchasing preservative-free Products. Consumers rely on Defendants' labeling and advertising of the Products as "preservative-free" and/or "0% preservative" to be truthful and would not know that the Products actually contain a preservative ingredient.

7.    Reasonable consumers such as Plaintiff do not have specialized knowledge necessary to identify ingredients in the Products as being inconsistent with Defendants' advertised "Preservative-Free" and/or "0% Preservative" representations.

8.    Defendants know that consumers are willing to pay more for products without any preservatives, and advertise the Products with the intention that consumers rely on the representations made on the front of the Products' packaging.

9.    By falsely labeling the Products as being "Preservative-Free" and/or "0% Preservative"  Defendants have profited from consumers' preference for cosmetic products that are made free of preservatives.

**PARTIES**

10.    **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased various types of the Products at different times during the Class Period, and most recently, she purchased the Avene "Preservative-Free" Tolerance Control Soothing Skin Recovery Cream from a CVS location in San Jose, CA, in or about May of 2025. In making her purchase, Plaintiff relied upon Defendants' labeling and advertising claims, namely, the Challenged Representations labels clearly printed on the front of the Products. These claims were prepared and approved by Defendants and their agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products. If Plaintiff had known that the Products contained a preservative, then Plaintiff would not have purchased the Products, or she would have purchased it at a substantially lower price.

11.    **Plaintiff's Future Harm:** Plaintiff would like to purchase the Products again only if she can be sure that Defendants are compliant with the state consumer protection laws. Plaintiff continues to see Defendants' Products in stores available for purchase, and desires to purchase them

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

again if the representation regarding the Challenged Representations were in fact true. Since Plaintiff would like to purchase the Products again to obtain a cosmetic product that, as advertised, is truly preservative free, Plaintiff would purchase it again in the future—despite the fact that it was once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Products were improved (no longer contain preservative ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of cosmetic products, such as the Products. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are "preservatives" or not. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendants fixed the formulation of the Products such that Plaintiff may buy it again, believing it to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Challenged Representations. Based on information and belief, the labeling of the Products purchased by Plaintiff is typical of the labeling of the Products purchased by members of the class.

12. **Defendants**. Pierre Fabre USA Inc. is a New Jersey corporation with its principal place of business at 500 Plaza Drive, Suite 701B, Secaucus, New Jersey 07094. It is a subsidiary or affiliated entity of the French parent company Pierre Fabre Dermo-Cosmetique, headquartered in France. At all times during the class period, Defendants were the manufacturer, distributor, marketer, and seller of the Products. Defendants directly and through their agents, have substantial contacts with and receives substantial benefits and income from and through the State of California.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14. Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

a citizen of California who resides in this District. Plaintiff purchased the Product in this District. Defendants have deliberately marketed, advertised, and sold the Products within this District. Defendants receive substantial compensation from sales in this District.

15.    Defendants are subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendants and California. Defendants are authorized to do and are doing business in California.

**FACTUAL ALLEGATIONS**

**A.  Citric Acid**

16.    Defendants prominently advertise and label the Products as "Preservative-Free" and/or "0% Preservative," misleading reasonable consumers into believing they contain no preservatives. However, the Products contain a well-known and well-documented preservative, citric acid.

17.    Dermatology and industry literature describe preservatives as ingredients added to beauty and personal care products to extend shelf life by preventing or slowing microbial growth—and list citric acid among the common preservatives found in skincare.[3]

18.    "Citric acid can slow the growth of bacteria, yeast, mold, and fungus. It prevents products from spoiling, prolonging the shelf life of foods, beverages, **and cosmetics**. In cosmetics, citric acid is often used to preserve the color and fragrance compounds in toiletries and perfumes. There are also properties in citric acid that can help clear skin infections, making it common in face creams and makeup."[4] "It has multiple benefits - from preserving the formulations to preserving the skin. Moreover, Citric acid increases the shelf life of cosmetic and skin care products by acting as a preservative."[5] "Citric acid and its diammonium, potassium and sodium citrate salts are used to help preserve cosmetics and personal care products by chelating metals that can lead to their deterioration."[6]

---

[3]  Preservatives in Skincare: A Comprehensive Guide, Harley Street Healthcare London Dermatology Clinics, available at https://londondermatologyclinics.com/preservatives-in-skincare-a-comprehensive-guide/
[4]  Using Citric Acid As A Preservative, Kraft Chemical (February 6, 2024), available at https://www.kraftchemical.com/using-citric-acid-as-a-preservative/
[5]  CITRIC    ACID,    SpecialChem,    (September    29,    2012),    available    at https://www.specialchem.com/cosmetics/inci-ingredients/citric-acid
[6]  Citric    Acid-Derived    Ingredients,    Cosmetics    Info,    available    at https://www.cosmeticsinfo.org/ingredient/citric-acid/

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

19.     Consistent with that definition, European scientific authorities expressly identify citric acid as a preservative for leave-on and rinse-off cosmetics, effective against bacteria, yeasts, and molds—an acknowledgment that citric acid is deployed in cosmetics for preservation.[7]

20.     Market surveys confirm citric acid's widespread use as a preservative across cosmetic categories. In an analysis of more than 2,300 products, citric acid was among the most common preservatives in dermocosmetics and supermarket cosmetics (≈24%) and was the most frequent preservative in cosmetics from herbal shops (≈29%). This prevalence reflects industry-standard preservative use of citric acid in cosmetics.[8]

21.     Mechanistically, citric acid preserves cosmetic formulations by (a) acidification/pH control that suppresses microbial proliferation and (b) chelation of metal ions that catalyze deterioration—while also potentiating other antimicrobials and disrupting microbial membranes.[9] Authoritative technical evaluations further document citric acid's efficacy against bacteria (e.g., *Listeria*) and its ability to enhance preservative systems—classic preservation effects that prevent or retard deterioration.[10]

22.     Defendant contention that citric acid is added to the Products "only to lower pH" concedes its preservative purpose: preservation science recognizes that pH-lowering is the preservative mechanism. Cosmetic references likewise state that, while often used to adjust pH, citric acid "supports a preservative system" by maintaining conditions less favorable to microbial

---

[7] European Commission, Scientific Committee on Consumer Products. (January 21, 2009). *Opinion on citric acid (and) silver citrate* (SCCP/1196/08). European Commission, Health & Consumer Protection DG, available at chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://ec.europa.eu/health/archive/ph_risk/committees/04_sccp/docs/sccp_o_165.pdf
[8] Pastor-Nieto MA, Alcántara-Nicolás F, Melgar-Molero V, Pérez-Mesonero R, Vergara-Sánchez A, Martín-Fuentes A, et al. Conservantes en productos de higiene y cosméticos, medicamentos tópicos y productos de limpieza doméstica en España. Actas Dermosifiliogr. 2017;108:758–770.
[9] What Are Natural Preservatives for Cosmetics?, Wholesale Supplies Plus (August 18, 2025), available at https://www.wholesalesuppliesplus.com/handmade101/business-articles/what-are-natural-preservatives-for-cosmetics.aspx?srsltid=AfmBOoqL0UI-lTxMqwOzUx2OEETZjCFGRccLUKYNxccOqINSrgoO_dmh
[10] Organic Materials Review Institute (OMRI). (2015, February 17). *Technical Evaluation Report: Citric Acid and its Salts – Handling/Processing.* Prepared for the USDA National Organic Program. https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf

CLASS ACTION COMPLAINT

growth and "increases the shelf life" of cosmetic formulations.[11] Accordingly, products formulated with citric acid cannot truthfully be marketed as "preservative-free."

23.    The Encyclopedia Britanica also classifies citric acid as a preservative because it has antioxidant properties.[12]

24.    Citric acid acts as a preservative in the Products regardless of the subjective purpose or intent for why Defendants added citric acid to the Products because citric acid acts as a preservative *even if* very low levels are contained in the Products.[13]

25.    Each ingredient is added to the cosmetic formulation for a well-defined function, but it can, simultaneously, contribute to another effect (such as antimicrobial activity), thus acting as a multifunctional ingredient. In the sense of self-preservation, citric acid has been used as antimicrobial preservative by replacing conventional preservatives. Citric acid, while being chelating agent, increases the permeability of cell membranes, makes them more sensitive to antimicrobial agents and blocks the iron required for metabolism and microbial growth.[14]

**B.   Defendant's Product Marketing Further Misleads Reasonable Consumers**

26.    Despite formulating its Products with preservative ingredient, Defendant methodically markets these Products as "preservative-free" and/or "0% preservative" both on its own and other third-party retailer websites, which further mislead consumers into believing the Products contain only preservative-free ingredients. See pictures from official retail websites below.

///

///

///

---

[11] Organic Materials Review Institute (OMRI). (2015, February 17). *Technical Evaluation Report: Citric Acid and its Salts – Handling/Processing.* Prepared for the USDA National Organic Program. https://www.ams.usda.gov/sites/default/files/media/Citric%20Acid%20TR%202015.pdf
[12]    Preservatives,    BRITANICA,    available    at    https://www.britannica.com/topic/food-additive/Preservatives#ref502211
[13] *See* Doores, S., 1993. Organic acids. In: Davidson, P.M., Branen, A.L. (Eds.), *Antimicrobials in Foods.* Marcel Dekker, Inc., New York, pp. 95-136.
http://base.dnsgb.com. ua/files/book/ Agriculture/Foods/Antimicrobials-in-Food. pdf
[14]  Halla, N., Fernandes, I. P., Heleno, S. A., Costa, P., Boucherit-Otmani, Z., Boucherit, K., Rodrigues, A. E., Ferreira, I. C. F. R., & Barreiro, M. F. (2018). Cosmetics Preservation: A Review on    Present    Strategies.    Molecules    (Basel,    Switzerland),    23(7),    1571. https://doi.org/10.3390/molecules23071571

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205



**PRODUCT BENEFITS**

- Soothes sensations of discomfort, like tingling, burning sensation and tightness
- Provides 24 hours of continuous hydration
- Sterile packaging allows formula to remain free of preservatives and parabens

**FORMULATED WITHOUT**

Preservative-free, fragrance-free, paraben-free, mineral oil-free, silicone-free

# Tolerance Control Soothing Skin Recovery Cream

**$38.00**  ★★★★☆  4.0 (400)  |  WRITE REVIEW

Lightweight daily cream helps restore skin's barrier while soothing visible redness, tightness and over-heating. Infused with postbiotics to calm sensations of skin discomfort. Sterile packaging allows formula to be preservative-free.

Harper's Bazaar 2022 Skincare Awards
BEST MOISTURIZER FOR SENSITIVE SKIN

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# Tolerance Control Soothing Skin Recovery Balm

$38.00    ★★★★⯪  4.4 (127)  |  WRITE REVIEW

Rich daily cream helps restore skin's barrier while soothing visible redness, tightness and over-heating. Infused with postbiotics to calm sensations of skin discomfort. Sterile packaging allows formula to be preservative-free.

PRODUCT BENEFITS                                                                    ⌄

- Airless pump keeps cream safe for its entire use without any preservatives

- Helps maintain skin's natural microbiome for healthy skin environment

- Seals in moisture and restores skin's barrier for 48-hour hydration

FORMULATED WITHOUT                                                                  ⌄

Formulated to minimize risk of allergic reactions, Wont clog pores, Preservative-free, Fragrance-free, Paraben-free, Animal derived ingredient-free

## Key Dermatological Ingredients

 **I-MODULIA:**
Postbiotic complex from Avène Thermal Spring Water calms itching* while supporting skin's defense system

 **CER-OMEGA:**
Derived from evening primrose and rich in omega-6 to nourish, hydrate and help restore skin's barrier

 **AVENE THERMAL SPRING WATER:**
Clinically shown by 150 studies to soothe, soften and calm the skin



 **STERILE COSMETICS:**
Allows formula to be free of preservatives, parabens and fragrance with its patented airless packaging

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205



**C.** **Defendants Mislead Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to their Detriment**

27.     **Materiality.** The Challenged Representations are material to reasonable consumers, including Plaintiff, in deciding to buy the Products. Specifically, the composition of the Products containing no preservatives—is important to consumers and motivates them to buy the Products.

28.     **Reliance**. The Class, including Plaintiff, reasonably relied on the Challenged Representations in deciding to purchase the Products.

29.     **Consumers Lack Knowledge of Falsity**. Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Products' Challenged Representations are false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendants and therefore have no personal knowledge of the actual ingredients used to make the Products or how those ingredients are made, including whether preservative ingredients are included. Additionally, average consumers do not have the specialized

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Products' ingredient disclosures whether certain ingredients, are preservatives. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer product's packaging, like the Products' packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.[15]

30.    The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[16] That decision is heavily based upon the product's front labeling

---

[15] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed October 31, 2024) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

[16]    Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-window/ (citing *Shopping Takes Only Seconds... In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last visited 10/09/2025).

15

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1    because consumers do not have time to review and read every portion of the label and inspect in

2    detail the rear label which depicts in small print the ingredients.

3        31.    **Defendants' Knowledge**. Defendants knew, or should have known, that the

4    Challenged Representations were false, misleading, deceptive, and unlawful, at the time that

5    Defendants manufactured, marketed, advertised, labeled, and sold the Products using the

6    Challenged Representations to Plaintiff and the Class. Defendants intentionally and deliberately

7    used Challenged Representations, alongside its massive marketing campaign and brand strategy, to

8    cause Plaintiff and similarly situated consumers to buy the Products believing that the Challenged

9    Representations are true.

10        a.  **Knowledge of Falsity.** Defendants marketed the Products with the Challenged
      Representations, but Defendants opted to formulate and manufacture them in a
11    manner that does not conform to this representation. Specifically, Defendants
      advertised and labeled the Products with the Challenged Representations, but,
12    instead of using only non-preservative ingredients, Defendants chose to make the
13    Products with citric acid, a well-documented preservative.

14        b.  **Knowledge of Reasonable Consumers' Perception.** Defendants knew, or should
15    have known, that the Challenged Representations would lead reasonable
      consumers into believing that the Products were preservative free—i.e., the
16    Products do not contain preservative ingredients. Not only have Defendants
      labeled the Products with the Challenged Representations and executed a long-
17    standing brand strategy and advertising campaign to identify the Products with the
      Challenged Representations, but Defendants also have an obligation under section
18    5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate
19    its marketing claims from the perspective of the reasonable consumer. That means
      Defendants were statutorily obligated to consider whether the Challenged
20    Representations, be it in isolation or conjunction with its marketing campaign,
      would mislead reasonable consumers into believing that the Products were made
21    of only non-preservative ingredients. Thus, Defendants either knew the
22    Challenged Representations were misleading before they marketed the Products
      to the Class, including Plaintiff, or Defendants would have known that it was
23    deceptive had Defendants complied with its statutory obligations.

24        c.  **Knowledge of Materiality.** Defendants knew or should have known that the
      Challenged Representations are material to consumers. *First*, manufacturers and
25    marketers, like Defendants, generally reserve the front primary display panel of
26    labels on consumer products for the most important and persuasive information,
      which they believe will motivate consumers to buy the products. Here, the
27    conspicuousness of the Challenged Representations on the Products' labels
      demonstrate Defendants' awareness of its importance to consumers and
28    Defendants' understanding that consumers prefer and are motivated to buy
      products that conform to the Challenged Representations. *Second*, manufacturers

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Products. Here, the constant, unwavering use of the Challenged Representations on the Products, advertisements, and throughout Defendants' marketing campaign, evidence Defendants' awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendants' intent to convince consumers that the Products conform to the Challenged Representations and, ultimately, drive sales.

d. **Defendants Continued Deception, Despite Their Knowledge.** Defendants, as the manufacturers and marketers of the Products, had exclusive control over the Challenged Representations' inclusion on the Products' labels, and advertisements—i.e., Defendants readily and easily could have stopped using the Challenged Representation to sell the Products. However, despite Defendants' knowledge of the Challenged Representations' falsity, and Defendants' knowledge that consumers reasonably rely on the Challenged Representations in deciding to buy the Products, Defendants deliberately chose to market the Products with the Challenged Representations thereby misleading consumers into buying or otherwise overpaying for the Products. Thus, Defendants knew, or should have known, at all relevant times, that the Challenged Representations mislead reasonable consumers, such as Plaintiff, into buying the Products to attain the product-attributes that Defendants falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendants to stop misleading consumers with the Challenged Representations, Defendants have continued to market the Products using the Challenged Representations.

32.     By letter dated September 23, 2025, Plaintiff advised Defendants of their false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a) regarding Defendants' use of citric acid – a preservative ingredient. Plaintiff has provided Defendants with notice of their violations of the CLRA pursuant to Civil Code § 1782(a).

**D.  The Products Are Substantially Similar**

33.     As described *supra*, Plaintiff purchased the Avene "Preservative-Free" Tolerance Control Soothing Skin Recovery Cream (the "Purchased Product"). The additional unpurchased products are substantially similar to the Purchased Product.

a. **Defendants.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by the Defendants.

b. **Brand.** All Products are sold under the Avene brand name.

c. **Marketing Demographics.** All Products are marketed directly to consumers for personal use.

d. **Purpose**. All Products are intended for the primary purpose of personal care.

CLASS ACTION COMPLAINT

e. **Application**. All Products are applied in the same manner – directly to face and/or body.

f. **False Advertising Claims.** All Products contain the same Challenged Representations on the Products' labeling and packaging. In addition, all Products prominently display the Challenged Representations on the front label in order to focus the consumer's attention on the Challenged Representations.

g. **Key Ingredients.** All Products contain citric acid, a preservative ingredient.

h. **Misleading Effect.** The misleading effect of the Challenged Representations on consumers is the same for all Products—consumers are tricked into buying or otherwise over-paying a premium for Products that are composed of no preservatives, but they receive Products that, contrary to the Products' labels, also contain citric acid, a preservative ingredient.

**E.** **No Adequate Remedy at Law**

34. **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a. **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendants' overall unfair marketing scheme to promote and brand the Products with the Challenged Representations, across a multitude of media platforms, including the Products' labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representations. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representation and omission made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action

18

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct).    Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendants continue to misrepresent the Products with the Challenged Representations. Injunctive relief is necessary to prevent Defendants from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm— none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendants' unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products' Challenged Representations are not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendants' future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Products' sales, and quantities of past/future Products' sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

## **CLASS ALLEGATIONS**

2      35.    **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal

3   Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of herself and all others similarly situated,

4   and as members of the Classes defined as follows:

5
6           All persons or entities that, within four years prior to the filing of this
            Complaint through present, purchased the Products in the United States,
            displaying the Challenged Representations on the Products' labels, for
7           purposes other than resale ("**Nationwide Class**"); and

8           All persons or entities that, within four years prior to the filing of this
9           Complaint through present, purchased the Products in California,
            displaying the Challenged Representations on the Products' labels, for
10          purposes other than resale ("**California Subclass**")

11   ("Nationwide Class" and "California Subclass," collectively, "**Class**").

12      36.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendants, their

13   assigns, successors, and legal representatives; (ii) any entities in which Defendants have controlling

14   interests; (iii) federal, state, and/or local governments, including, but not limited to, their

15   departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions;

16   and (iv) any judicial officer presiding over this matter and person within the third degree of

17   consanguinity to such judicial officer.

18      37.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to

19   amend or otherwise alter the class definitions presented to the Court at the appropriate time in

20   response to facts learned through discovery, legal arguments advanced by Defendants, or otherwise.

21      38.    **Numerosity:** Members of the Class are so numerous that joinder of all members is

22   impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of

23   purchasers (if not more) dispersed throughout the United States, and the California Subclass

24   likewise consists of thousands of purchasers (if not more) dispersed throughout the State of

25   California. Accordingly, it would be impracticable to join all members of the Class before the Court.

26      39.    **Common Questions Predominate:** There are numerous and substantial questions of

27   law or fact common to all members of the Class that predominate over any individual issues.

28   Included within the common questions of law or fact are:

CLASS ACTION COMPLAINT

a.   Whether Defendants engaged in unlawful, unfair or deceptive business practices by advertising and selling the Products;

b.   Whether Defendants' conduct of advertising and selling the Products as being preservative free, creating the reasonable assumption that the Products do not contain any preservative ingredients, when the Products contain citric acid, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*

c.   Whether Defendants used deceptive representation in connection with the sale of the Products in violation of Civil Code section 1750, *et seq.*;

d.   Whether Defendants represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq.*;

e.   Whether Defendants advertised the Products with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

f.   Whether Defendants' labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.   Whether Defendants knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.   Whether Defendants' conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*

i.   Whether Defendants' conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*

j.   Whether Defendants' conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.   Whether Plaintiff and the Class paid more money for the Products than they actually received;

l.   How much more money Plaintiff and the Class paid for the Products than they actually received;

m.   Whether Defendants' conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendants were unjustly enriched by its unlawful conduct.

40.   **Typicality**: Plaintiff's claims are typical of the claims of the Class Members she seeks to represent because Plaintiff, like the Class Members, purchased Defendants' misleading and deceptive Products. Defendants' unlawful, unfair and/or fraudulent actions concern the same

21

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendants' conduct.  Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

41.    **Adequacy**: Plaintiff is an adequate representative of the Class she seeks to represent because her interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

42.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.    Absent a Class, the members of the Class will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoy its ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendants has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

43.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendants.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

44.    **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

45.    **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT ONE**

**Violation of California Unfair Competition Law**

**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

(***Individually and On Behalf of the California Subclass***)

46.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

47.    **California Subclass.** This cause of action is brought pursuant to Business and Professions Code Section 17200, *et seq*., on behalf of Plaintiff and a California Subclass who purchased the Products within the applicable statute of limitations.

48.    **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

49.    **False Advertising Claims.** Defendants, in their labeling and advertising of the Products, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Products—specifically, the Challenged Representations (i.e., that the Products contain no preservatives) — despite the fact the Products contain citric acid, a well-documented preservative. Such claim and omission appear on the front labels of the Products, which are sold at retail stores, point-of-purchase displays, and online.

50.    **Defendants' Deliberately False and Fraudulent Marketing Scheme.** Defendants do not have any reasonable basis for the claims about the Products made in Defendants' advertising

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

and on Defendants' labeling because the Products contain citric acid, a well-documented preservative. Defendants knew and know that the Products contain citric acid, yet Defendants intentionally advertise and market the Products to cause reasonable consumers to believe that the Products are preservative free.

51. **False Advertising Claims Cause Purchase of Products.** Defendants' labeling and advertising of the Products led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Products are preservative free, to the exclusion of preservative ingredients.

52. **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendants' Challenged Representations—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from Defendants.

53. **Conduct Violates the UCL.** Defendants' conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendants' use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

54. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendants failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

55. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendants voluntarily alter its conduct or Defendants are otherwise ordered to do so.

56.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendants to disclose such misrepresentation, and to preclude Defendants' failure to disclose the existence and significance of said misrepresentation.

57.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct to prevent ongoing and future harm that will result.

58.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California Subclass. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants intentionally misrepresented and/or concealed material facts with the intent to

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

### "Unfair" Prong

59.    **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

60.    **Injury.** Defendants' actions of mislabeling the Products with the Challenged Representations do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive products commensurate with their reasonable expectations, overpay for the Products, and receive products of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendants' deceptive labeling and/or advertising of the Products. Accordingly, the injuries caused by Defendants' deceptive labeling and advertising outweigh any benefits.

61.    **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the Defendants' conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

62.    **No Utility.** Here, Defendants' conduct of labeling the Products as "Preservative-Free" and/or "0% Preservative"—when the Products contain citric acid, has no utility and financially harms purchasers. Thus, the utility of Defendants' conduct is vastly outweighed by the gravity of harm.

63.    **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

64.    **Unfair Conduct.** Defendants' labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendants

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

knew or should have known of their unfair conduct. Defendants' misrepresentation constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

65.     **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein. Defendants could have refrained from labeling the Products with the Challenged Representations.

66.     **Defendants' Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

67.     **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practices of labeling the Products with the Challenged Representations.

68.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that are supposedly preservative free, but instead purchased Products that contain citric acid, a well-documented preservative. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "Fraudulent" Prong

69.     **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

70.     **Fraudulent & Material Challenged Representations.** Defendants used the Challenged Representations with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The Challenged Representations are false, and Defendants knew or

1 should have known of its falsity. The Challenged Representations are likely to deceive consumers
2 into purchasing the Products because it is material to the average, ordinary, and reasonable
3 consumer.

4      71.    **Fraudulent Business Practice.** As alleged herein, the misrepresentation by
5 Defendants constitutes a fraudulent business practice in violation of California Business &
6 Professions Code Section 17200.

7      72.    **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass
8 reasonably and detrimentally relied on the material and false Challenged Representations to their
9 detriment in that they purchased the Products.

10     73.    **Reasonably Available Alternatives.** Defendants had reasonably available
11 alternatives to further their legitimate business interests, other than the conduct described herein.
12 Defendants could have refrained from labeling the Products with the Challenged Representations.
13 Alternatively, they could have refrained from including citric acid as an ingredient within the
14 Products.

15     74.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in
16 Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of
17 conduct.

18     75.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and
19 the California Subclass seek an order of this Court enjoining Defendants from continuing to engage,
20 use, or employ their practice of labeling the Products with the Challenged Representations.

21     76.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact
22 and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass
23 paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass
24 paid for Products that supposedly contained no preservatives, but instead purchased Products that
25 contain citric acid, a well-documented preservative. Plaintiff and the California Subclass would not
26 have purchased the Products, or would have paid substantially less for the Products, if they had
27 known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks
28 damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1

**"Unlawful" Prong**

2    77.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful

3    practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC*

4    *Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

5    78.    **Violations of CLRA and FAL.** Defendants' labeling of the Products, as alleged

6    herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business

7    and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections

8    regarding those causes of action.

9    79.    **Additional Violations.** Defendants' conduct in making the false representation

10   described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence

11   to applicable laws, as set forth herein, all of which are binding upon and burdensome to its

12   competitors. This conduct engenders an unfair competitive advantage for Defendants, thereby

13   constituting an unfair, fraudulent and/or unlawful business practice under California Business &

14   Professions Code sections 17200-17208. Additionally, Defendants' misrepresentation of material

15   facts, as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and

16   1770, as well as the common law.

17   80.    **Unlawful Conduct.** Defendants' labeling and advertising of the Products, as alleged

18   herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct.

19   Defendants knew or should have known of its unlawful conduct.

20   81.    **Reasonably Available Alternatives.** Defendants had reasonably available

21   alternatives to further its legitimate business interests, other than the conduct described herein.

22   Defendants could have refrained from labeling the Products with the Challenged Representations

23   and/or omitting the use of preservative ingredients within the Products.

24   82.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in

25   Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of

26   conduct.

27

28

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

83.     **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendants from continuing to engage, use, or employ their practice of false and deceptive advertising of the Products.

84.     **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendants' unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Specifically, Plaintiff and the California Subclass paid for Products that were supposedly preservative free, but instead purchased Products that contain citric acid – a preservative ingredient. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**

**(*Individually and On Behalf of the California Subclass*)**

85.     **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

86.     **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

87.     **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

88.     **False & Material Challenged Representations Disseminated to Public.** Defendants violated section 17500 when they advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Challenged Representations disseminated to the public through the Products' labeling, marketing, and advertising.  This representation was false because the Products do not conform to it. The representation was material because it is likely to mislead a reasonable consumer into purchasing the Products.

89.    **Knowledge.** In making and disseminating the representation alleged herein, Defendants knew or should have known that the representation was untrue or misleading, and acted in violation of § 17500.

90.    **Intent to Sell.** Defendants' Challenged Representations were specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

91.    **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendants' misconduct prevent ongoing and future harm that will result.

92.    **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP | 1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>COUNT THREE</u>

### Violation of California Consumers Legal Remedies Act

### Cal. Civ. Code §§ 1750, *et seq.*

### (*Individually and On Behalf of the California Subclass*)

93.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

94.    **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

95.    **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful.

96.    **Goods/Services.** The Products are each a "good," as defined by the CLRA in California Civil Code §1761(a).

97.    **Defendants.** Defendants are each a "person," as defined by the CLRA in California Civil Code §1761(c).

98.    **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

99.    **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

100.    **Violations of the CLRA.** Defendants violated the following sections of the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representations.

a.    Section 1770(a)(5) by representing that the Products have "characteristics, . . . uses [or] benefits . . . which [they] do not have."

b.    Section 1770(a)(7) by representing that the Products "[are] of a particular standard, quality, or grade . . . [when] [they are] of another."

c. Section 1770(a)(9) by advertising the Products "with [the] intent not to sell [them] as advertised."

101.  **Knowledge.** Defendants' uniform and material representation regarding the Products were likely to deceive, and Defendants knew or should have known that their representation was untrue and misleading.

102.  **Malicious.** Defendants' conduct is malicious, fraudulent, and wanton in that Defendants intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

103.  **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendants suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

104.  **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendants' violations of the CLRA because they relied on the Challenged Representations in deciding to purchase the Products. The Challenged Representations were a substantial factor. The Challenged Representations were material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

105.  **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or around September 23 of 2025, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant Pierre Fabre USA, Inc. at its headquarters, principal place of business (500 Plaza Drive, Suite 701 B Secaucus, NJ 07094) and registered agents' addresses (330 N. Brand Blvd. Suite 700, Glendale, CA 91203 and 1209 Orange St. Wilmington, DE 19801).

106.  **Causation/Damages.** As a direct and proximate result of Defendants' misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

107. **Injunction.** Given that Defendants' conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendants' violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendants' false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendants' unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendants from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requires Defendants to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendants' deceptive labeling of the Products with the Challenged Representations.

108. **Punitive Damages.** Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants' misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized,

adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants. Accordingly, Plaintiff seeks an award of punitive damages against Defendants.

## COUNT FOUR

### Breach of Express Warranty

### *(Individually and On Behalf of Nationwide Class and California Subclass)*

109. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

110. **Express Warranty**. By advertising and selling the Product at issue, Defendant made promises and affirmations of fact on the Product's labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Product's labeling and advertising, to create express warranties that the Product, among other things, conforms to the Challenged Representations.

111. All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the Class.

112. Defendants breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims.

113. **Causation/Remedies.** As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

114. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for breach of warranty on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

CLASS ACTION COMPLAINT

unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

115.  As a result of Defendants' breach of contract, Plaintiff and the Class have been damaged in the amount to be determined at trial.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*Individually and On Behalf of the Nationwide Class and California Subclass*)

116.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

117.  **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Class who purchased the Products within the applicable statute of limitations.

118.  **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendants in the form of the purchase price of the Products.

119.  **Defendants' Knowledge of Conferred Benefit.** Defendants had knowledge of such benefit and Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would not generate revenue from the sales of the Products.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

120.    **Defendants' Unjust Receipt Through Deception.** Defendants' owing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent, misleading, and deceptive representation and omission.

121.    **Causation/Damages.** As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendants' conduct to prevent ongoing and future harm that will result.

122.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendants' unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendants' misconduct is malicious as Defendants acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendants willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendants were aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendants misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendants' misconduct is fraudulent as Defendants, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendants.

## PRAYER FOR RELIEF

123.    WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendants as follows:

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendants' conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendants to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendants immediately cease and desists from selling the unlawful Products in violation of law; that enjoin Defendants from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; that require Defendants to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendants' unlawful conduct; and/or that require Defendants to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

///

///

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale Ave. Suite 204 Glendale, CA 91205

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

DATED: December 8, 2025　　　　　　**MALK & POGO LAW GROUP, LLP**

/s/

Valter Malkhasyan, Esq.
Erik Pogosyan, Esq.

*Counsel for Plaintiff and the proposed class*