United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IVY-KARINA VALES,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>PIERRE FABRE DERMO-COSMETIQUE USA, INC., et al.,<br><br>　　　　　Defendants. | Case No.　25-cv-10523-BLF<br><br>**ORDER DENYING MOTION TO DISMISS**<br><br>[Re:　ECF No. 13] |

Before the Court is Defendants Pierre Fabre USA Inc. and Pierre Fabre Dermo-Cosmetique USA, Inc.'s Motion to Dismiss.　ECF No. 13 ("Mot."); *see also* ECF No. 21 ("Reply").　Plaintiff Ivy-Karina Vales opposes.　ECF No. 19 ("Opp.").　The Court held a hearing on the motion on April 9, 2026.　*See* ECF No. 22.　For the reasons that follow, the Court DENIES Defendants' motion to dismiss.

**I.　BACKGROUND**

This putative class action arises from Defendants' Avène "Preservative-Free" and/or "0% Preservative" skin care products (the "Products").　ECF No. 1 ("CAC").　According to Plaintiff, Defendants "prominently advertise and label the Products as 'Preservative-Free' and/or '0% Preservative,' despite the fact that the Products contain citric acid—a "well known and well-documented preservative."　CAC ¶ 16; *see also id.* ¶¶ 17–25 (alleging that citric acid acts as a preservative).　In May 2025, Plaintiff purchased Avène "Preservative-Free" Tolerance Control Soothing Skin Recovery Cream (the "Purchased Product") from a CVS location in San Jose, California.　CAC ¶ 10.　In making this purchase, she relied on Defendants' labeling and advertising claims and, but for those claims, she would not have purchased the cream or would have purchased it for less.　*Id.*　Plaintiff further asserts that several other Avène products, namely

the Tolerance Control Soothing Skin Recovery Balm,  XeraCalm A.D Lipid-Replenishing Cream, and XeraCalm A.D Lipid-Replenishing Balm contain citric acid and the same challenged representation on their labels.  *Id.* ¶¶ 5, 33.

On December 8, 2025, Plaintiff brought this action on behalf of herself and all others similarly situated.  She asserts five causes of action: (1) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (2) violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, et seq.; (3) Violation of California Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq.; (4) breach of express warranty; and (5) unjust enrichment.  *Id.* ¶¶ 46–122.  She seeks, *inter alia*, declaratory relief, an injunction requiring Defendants to change their business practices, damages, restitution, disgorgement, punitive damages, attorneys' fees and costs, and interest.  *Id.* at Prayer for Relief.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

A party may challenge the Court's subject matter jurisdiction by bringing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack, like the one here, the movant asserts that the lack of subject matter jurisdiction is apparent from the face of the complaint.  *Id.*  "The court need not presume the truthfulness of the plaintiff's allegations."  *Id.*  If the moving party presents evidence demonstrating the lack of subject matter jurisdiction, the party opposing the motion must present affidavits or other evidence sufficient to establish subject matter jurisdiction.  *Id.*

### B.  Rule 12(b)(6)

Dismissal of a complaint is appropriate under Rule 12(b)(6) of the Federal Rules of Civil Procedure "if the complaint fails to state a cognizable legal theory or fails to provide sufficient facts to support a claim."  *Sinclair v. City of Seattle*, 61 F.4th 674, 678 (9th Cir. 2023).  When considering a Rule 12(b)(6) motion, a court must "take all allegations of fact as true and construe them in the light most favorable to the nonmoving party."  *Id*.  While a complaint need not contain

United States District Court
Northern District of California

detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001), *amended on other grounds,* 275 F.3d 1187 (9th Cir. 2001)).

### C. Leave to Amend

In deciding whether to grant leave to amend, a court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003). A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment. *Id.* at 1052. "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.* However, a strong showing with respect to one of the other factors may warrant denial of leave to amend. *See id.*

### III.   REQUESTS FOR JUDICIAL NOTICE

Defendants request that the Court take judicial notice of three patents: Patent Nos. US10328165B2, US9079206B2, and US10821456B2. Mot. at 2. A court may take judicial notice of adjudicative facts that are "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2). The Court finds that the patents are proper subjects of judicial notice and accordingly grants Defendants' request. *See X One, Inc. v. Uber Techs., Inc.*, 239 F. Supp. 3d 1174, 1182 n. 1 (2017).

### IV.   DISCUSSION

Defendants move to dismiss the complaint on two grounds. First, they contend that no

3

United States District Court
Northern District of California

claim is adequately stated. Mot. at 9–19. Second, they argue that Plaintiff lacks Article III standing. *Id.* at 19–24. Plaintiff urges that each cause of action is sufficiently alleged, Opp. at 3–14, and further asserts that the complaint's allegations are sufficient to establish standing, *id.* at 14–20.

### A. Article III Standing

Because it is a jurisdictional issue, the Court begins with the Parties' arguments as to Article IIII standing. "[T]he 'irreducible constitutional minimum' of standing consists of three elements." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). The plaintiff bears the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.*; *see also FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231 (1990). "To establish injury in fact, a plaintiff must show that she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo*, 578 U.S. at 339 (quoting *Lujan,* 504 U.S. at 560).

### 1. Economic Injury

Defendants first challenge standing on the ground that the CAC does not establish that Plaintiff suffered an injury. Mot. at 19. Plaintiff contends that she has pled an economic injury. Mot. at 14–15.

Plaintiff alleges that consumers place a premium on preservative-free goods. *See* CAC ¶¶ 3–4, 33. She further explains that had she known that the Products contained citric acid, she would not have purchased them or would have purchased them for substantially less. *See id.* ¶ 10. Finally, she asserts that she was denied the benefit of her bargain—namely the full value of a preservative-free skincare product. *Id.* ¶¶ 118–21. These allegations are sufficient to establish an economic injury. As Plaintiff correctly points out, where "as here, 'Plaintiff[] contend[s] that class members paid more for [a product] than they otherwise would have paid, or bought it when they otherwise would not have done so' they have suffered an Article III injury in fact." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 n.3 (9th Cir. 2013) (quoting *Mazza v. Am. Honda Motor*

*Co.*, 666 F.3d 581, 595 (9th Cir. 2022)); *see also McGee v. S-L Snacks Nat'l*, 982 F.3d 700, 705–06 (9th Cir. 2020) (holding that a "benefit of the bargain theory" and an "overpayment theory" are both plausible theories of economic injury). Accordingly, the complaint is not subject to dismissal on this basis.

### 2. Unpurchased Products

Defendants also argue that Plaintiff lacks standing to bring claims for products she did not purchase because the unpurchased products serve different purposes and contain different ingredients. Mot. at 19–22. Plaintiff contends that the Products are substantially similar to the Purchased Product, and Defendants' argument about the differences amounts to an attempt to "slice hairs." Opp. at 15–17.

"Although some district courts reserve the issue until a motion for class certification, 'the majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.'" *T.T. v. Supercell, Inc.*, No. 22-cv-03196-HSG, 2023 WL 2562395, at *2 (N.D. Cal. Mar. 17, 2023) (quoting *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012)) (internal alteration omitted). On the other hand, "where the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Id.* (quoting *Miller*, 912 F. Supp. 2d at 870) (internal alteration omitted).

Here, Plaintiff purchased the Tolerance Control Soothing Skin Recovery Cream. CAC ¶ 33. She alleges that the unpurchased products (Tolerance Control Soothing Skin Recovery Balm, XeraCalm A.D Lipid-Replenishing Cream, and XeraCalm A.D Lipid-Replenishing Balm) are "substantially similar." *Id.* According to Plaintiff, the Products are all manufactured and labeled by Defendants, sold under the Avène name, applied directly to the skin, contain the same challenged representations displayed on the front label, contain citric acid, and have the same misleading impact on consumers. *Id.* In her opposition, Plaintiff voluntarily dismissed all claims with respect to the XeraCalm A.D Lipid-Replenishing Cream, which does not contain citric acid. *See* Opp. at 15. Turning to the remaining unpurchased products, a close examination of the

United States District Court
Northern District of California

authorities cited by Plaintiff demonstrates that products that are cousins can be substantially similar for the purposes of standing. In *Colucci v. ZonePerfect Nutrition Co.*, for example, the court found that the similarities between twenty varieties of nutrition bars was adequate to support a finding of standing at the pleading stage, No. 12–2907–SC, 2012 WL 6737800, at *4 (N.D. Cal. Dec. 28, 2012). Despite differences in flavor and ingredients, all the bars shared the same challenged label and six of the nine challenged ingredients. *Id.* So here too, the remaining products all share a substantially identical challenged representation ("0% Preservative" or "Preservative Free") and the same challenged ingredient (citric acid). As Defendants' own case acknowledges, "[t]hat the products all contain the same ingredient can sometimes satisfy the pleading standard." *Murphy v. Olly Pub. Benefit Corp.*, 651 F. Supp. 3d 1111, 1131 (N.D. Cal. 2023). The Court concludes that at this stage, Plaintiff has alleged substantial similarity sufficient to establish standing as to the remaining unpurchased products.

### 3.    Injunctive Relief

According to Defendants, Plaintiff also lacks standing to pursue injunctive relief because she has not plausibly alleged that she faces any threat of immediate or future harm flowing from the products' labels. Mot. at 22–24. The Court disagrees. In the Ninth Circuit, "a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an 'actual and imminent, not conjectural or hypothetical' threat of future harm." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)).

As Plaintiff correctly argues, Opp. at 17–20, she has alleged that she "would like to purchase the Products again to obtain a cosmetic product that, as advertised, is truly preservative free." CAC ¶ 11. She further asserts that she would still purchase the Products, "reasonably, but incorrectly assum[ing]" that the Products are free of preservatives—she is "not sophisticated in the chemistry, manufacturing, and formulation of cosmetic products." *Id.* A "consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was

improved" can give rise to a threat of future harm. *Davidson*, 889 F.3d at 970. Accordingly, the Court finds that Plaintiff's allegations as to future harm are sufficient, so the complaint is not subject to dismissal on this basis.

### B. Failure to State a Claim

Turning to Defendants' arguments under Rule 12(b)(6), Defendants urge that Plaintiff has failed to adequately state any claim. Mot. at 9–19. Plaintiff opposes, contending that each cause of action is sufficiently alleged. Opp. at 3–14.

#### 1. False or Misleading

Defendants first assert that Plaintiff cannot allege that the Products' labels are false or misleading because she does not and cannot assert that citric acid has a preservative effect therein. Mot. at 9–14. Plaintiff contends that Defendants' argument is a premature invitation to adjudicate the scientific question at the heart of this case. Opp. at 3–8.

The Court has no trouble rejecting Defendants' argument that it is not plausible to infer that citric acid acts as a preservative in the Products. This contention goes to the factual issues at the core of Plaintiff's claims. Plaintiff clearly and repeatedly alleges that citric acid is—and acts as—a preservative. *See* CAC ¶¶ 16, 20, 21, 23, 31, 49, 50, 68, 76. Defendants' assertion that Plaintiff's support for these allegations rests on shaky scientific ground because the complaint's sources refer to citric acid's effect on food, are outdated, or are otherwise unreliable is unpersuasive. *See* Mot. at 9–11. To the contrary, the sources support a plausible inference that citric acid indeed acts as a preservative in cosmetics. *See, e.g.*, CAC ¶ 18 n.6 (citing Citric Acid-Derived Ingredients, Cosmetics Info, available at https://www.cosmeticsinfo.org/ingredient/citric-acid/, which explains that "Citric acid . . . [is] used to help preserve cosmetics and personal care products by chelating metals that can lead to their deterioration.").

Defendants also note that the governing regulations do not define a "preservative" with respect to cosmetics and do not mandate disclosure or identification of preservatives. Mot. at 10. Maybe so, but a lack of regulation does not imply that citric acid does not act as a preservative in cosmetics. Finally, Defendants point out that the Products "are packaged using a patented method of ultra-high temperature sterilization and a patented airtight packaging system that allows the

7

product to remain sterile throughout use," thus avoiding the need for preservatives.  Mot. at 12.  Defendants urge that the sole plausible inference to draw is that citric acid serves a non-preservative function, such as "improving texture and feel."  Mot. at 13.  But this inference does not necessarily follow.  Defendants might have used a belt-and-suspenders approach by adding preservatives, although scientifically unnecessary.  The Court will not rule at the motion to dismiss stage that as a matter of science, citric acid does not act as a preservative in cosmetics.  *See Gitson v. Trader Joe's Co.*, No. 13-cv-01333-WHO, 2014 WL 1048640, at \*4 (N.D. Cal. Mar. 14, 2014) ("[W]hether sodium citrate, citric acid, and tocopherol function as artificial flavors, chemical preservatives, or both, is inappropriate to determine at this stage of the litigation.").

### 2. Reasonable Consumer Test

Defendants also argue that because a reasonable consumer reviewing the challenged labels would correctly discern that the Products do not contain preservatives, no reasonable consumer would be misled by the challenged packaging.  Mot. at 14–16.  Plaintiff urges that whether a reasonable consumer would be deceived by the label is a fact-intensive inquiry that is inappropriate for resolution at the motion to dismiss stage.  Opp. at 8–11.

Claims under the CLRA, UCL, and FAL are governed by the "reasonable consumer" standard, which requires plaintiffs to show that a "'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021).  While a reasonable consumer is not expected to "look beyond" an unambiguous misleading statement on the front of a package in order to "discover the truth from the ingredient list in small print on the side of the box," *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008), where "a front label is ambiguous, the ambiguity can be resolved by reference to the back label." *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023).

Defendants contend that "[a]ny reasonable consumer reviewing the label would correctly discern that there are no ingredients used in the Products for preservative purposes," including because of the patented packaging method.  Mot. at 16.  This argument is unpersuasive.  For one thing, "whether a business practice is deceptive will usually be a question of fact not appropriate for decision" at the motion to dismiss stage.  *See Williams*, 552 F.3d at 938.  For another, the

United States District Court
Northern District of California

United States District Court
Northern District of California

Court does not find the labels to be ambiguous.  They read "Preservative Free," or "0% Preservative."  *See* CAC ¶ 5.  A reasonable consumer would not be expected to review an ingredient list to discern whether it contradicts a straightforward declaration that a product is free of preservatives.  *See Nacarino v. Chobani, LLC*, No. 20-cv-07437-EMC, 2021 WL 3487117, at *7 (N.D. Cal. Aug. 9, 2021) ("[R]easonable consumers are not required to test front-label representations by examining the fine print in the ingredient list.").

At the hearing, Defendants referred the Court to *Moore*, 4 F.4th 874 (9th Cir. 2021).  But *Moore* does not compel a contrary result.  There, the Ninth Circuit considered a label for 100% New Zealand Manuka Honey, and found the label was not likely to deceive a reasonable consumer into believing the product contained only honey from bees harvesting the Manuka flower.  *Moore*, 4 F.4th at 876–77.  The *Moore* court determined that there may be some ambiguity as to what 100% meant and so considered other information available on the product.  *Id.* at 882.  Here, there is no such ambiguity in the label.  And even if a consumer *were* expected to review the back labels of the Products, the Court does not think a reasonable consumer would be expected to know that citric acid (which is alleged to act as a preservative) does not act as a preservative in a particular product.  *Cf. id.* at 883 ("[A] reasonable consumer would be quickly dissuaded from Plaintiffs' 'unreasonable or fanciful' interpretation of '100% New Zealand Manuka Honey' based on three key contextual inferences from the product itself.").  In sum, Plaintiff has plausibly alleged that the challenged representations are—at best—misleading under the reasonable consumer standard.

### 3.   Adequate Remedy at Law

Finally, Defendants argue that Plaintiff's claims for equitable relief must be dismissed pursuant to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because Plaintiff has an adequate remedy at law.  Mot. at 17–19.  Plaintiff contends that this argument fails, including because dismissal on this basis is premature, damages under the CLRA are not adequate, she seeks injunctive relief, and unjust enrichment may be pled as a separate cause of action.  Opp. at 12–14.

Under *Sonner*, a plaintiff must "establish that she lacks an adequate remedy at law before securing equitable restitution for past harm."  *Sonner*, 971 F.3d at 844.  Although "[c]ourts in the Ninth Circuit are divided on how exacting of a standard *Sonner* imposes on plaintiffs who plead

claims for equitable and legal remedies at the pleading stage . . . the Court is more inclined to agree with those courts that do not consider *Sonner* to impose strict requirements at the pleading stage." *Jeong v. Nexo Fin. LLC*, No. 21-cv-02392-BLF, 2022 WL 174236, at \*27 (N.D. Cal. Jan. 19, 2022).  With respect to past harms, Plaintiff may allege legal and equitable claims in the alternative at the pleading stage.  *See Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1114 (N.D. Cal. Mar. 11, 2020).  Furthermore, because "monetary damages for past harm are an inadequate remedy for the future harm that an injunction under California consumer protection law is aimed at," *Zeiger v. WellPet LLC*, 526 F. Supp. 3d 652, 687 (N.D. Cal. 2021), Plaintiff may also proceed on her claim for injunctive relief.

**V.    ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants Pierre Fabre USA Inc. and Pierre Fabre Dermo-Cosmetique USA, Inc.'s motion to dismiss (ECF No. 13) is DENIED.  The claims as to XeraCalm A.D Lipid-Replenishing Cream are DISMISSED without prejudice.

Dated:  April 10, 2026

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California